IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEWIS A. THOMPSON, #186403 | * |
|         Plaintiff, | |
|     v. | *   CIVIL ACTION NO. PJM-06-2328 |
| WARDEN RODERICK SOWER   . | * |
| ROXBURY CORRECTIONAL INSTITUTION | |
|   DISPENSARY | * |
| WARDEN JON GALLEY | |
| WESTERN CORRECTIONAL | * |
|   INSTITUTION DISPENSARY | |
|         Defendants. | * |
| | *** |

## MEMORANDUM OPINION

### Procedural History

This 42 U.S.C. § 1983 civil rights complaint for injunctive relief and damages was filed by Lewis Thompson on September 6, 2006. Plaintiff alleges that he filed remedies with the Warden and Commissioner to receive medical care for pain and suffering caused by cataracts in his left eye. He claims that the remedies were dismissed or were not responded to. Plaintiff states that he has been experiencing problems with his left eye since 2002 and medical staff have never properly diagnosed his condition or provided him appropriate medical care. He states that as a result he is now completely blind in his left eye.

Correctional Medical Services ("CMS") has filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on behalf of Defendant Roxbury Correctional Institution ("RCI") Dispensary.[1] Paper No. 7. Plaintiff has filed an opposition answer. Paper No. 10. On January 25, 2007, Defendants Sower and Galley filed a Motion to Dismiss or, in the Alternative, Motion for

---

[1] CMS responds only for RCI Dispensary for claims arising on or after July 1, 2005, the date on which CMS began its contractual services to provide medical care to Maryland Department of Public Safety and Correctional Services' inmates.

Summary Judgment and Plaintiff has filed a response thereto. Paper Nos. 13 & 15. The pleadings may be determined without oral argument. *See* Local Rule 105.6 (D. Md. 2004).

### **Standard of Review**

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

**Analysis**

According to the record presented by CMS, Plaintiff was transferred from WCI to RCI on July 5, 2005. He has a documented history of hypertension, allergic rhinitis, seborrhea, and antisocial personality disorder. Paper No. 7, Exs. A & B. On July 9, 2005, Plaintiff filed a sick-call request seeking various treatment, including cataract surgery. *Id*. Plaintiff was instructed to consult with a physician about cataract surgery at his next appointment in the Chronic Care Clinic. ("CCC"). *Id*. CMS states that Plaintiff made no further complaints regarding his eye until October 17, 2005, when he submitted a sick-call request for cataract surgery. *Id*. An RCI prison nurse tested Plaintiff's visual acuity and found it to be 20/30 in the right eye without glasses. Plaintiff indicated that he could not see the chart when using his left eye. He was scheduled for an optometry appointment and advised to return to the dispensary if his condition worsened.

On October 27, 2005, Plaintiff was seen in the CCC by Dr. Harold Tritch. Dr. Tritch noted that Plaintiff complained of blindness in his "right" eye due to a cataract and Tritch referred Plaintiff for an on-site consultation with the optometrist. *Id*. On November 1, 2005, Bruce Weaver, an optometrist, saw Plaintiff and noted a dense cataract in the left eye that had been present for more than two years. Weaver referred Plaintiff to an ophthalmologist. The consult was denied, however, because "it failed to meet the criteria that the opposite eye (Plaintiff's right eye) must not [be] better than 20/40 [corrected]." *Id*. CMS states that this criteria is established by the Collegial Review Committee of Wexford Health Sources, Inc. ("Wexford"), the private contractor for medical "utilization" review at Department of Public Safety and Correctional Services' institutions. In effect, Wexford must approve appointments and referrals made by CMS medical staff.

CMS states that Plaintiff was next evaluated by Physician's Assistant ("P.A.") Sarah Barr on January 5, 2006, for several complaints. Paper No. 7, Exs. A & B. At that time, Plaintiff

inquired about his cataract surgery. Barr indicated she would check on the appointment schedule. When Plaintiff was seen in the CCC on February 3, 2006, by Dr. Fatimah Ndiaye, he again inquired about his cataract surgery. Ndiaye ordered a re-check of Plaintiff's visual acuity. *Id.* Plaintiff's vision was checked four days later with only slightly different results from his previous check. On February 27, 2006, a prescription for eyeglasses was written to correct Plaintiff's myopia. He received the eyeglasses on February 28, 2006. *Id.*

On March 24, 2006, Plaintiff submitted a sick-call request complaining of constant pain in his left eye and forehead. He was evaluated by RCI Nurse Rose Mary Robinson on March 30, 2006. He requested medications for his chronic sinusitis and back pain and to see a physician to have his cataract removed. *Id.* He was referred to a P.A. and was examined five days later by P.A. Barr, who treated his complaints and referred him to an optometrist. *Id.* Plaintiff received another pair of eyeglasses on May 26, 2006. *Id.* On June 16, 2006, Plaintiff submitted a sick-call request complaining that his eyeglasses were broken. A prison nurse gave his glasses to the medical records department to be sent for repair. *Id.*

CMS states that Plaintiff presented no further complaints until September 26, 2006, when he filed a sick-call request complaining of pain in the eye from the cataract, back pain, and allergies. *Id.* Nurse Robinson noted nasal congestion but no other symptoms and referred Plaintiff to a P.A. Plaintiff was examined by P.A. Barr on October 3, 2006, and offered no complaints of eye pain.

On November 6, 2006, Dr. Kailash Chopra noted that Plaintiff had been evaluated by the optometrist for decreased visual acuity and referred Plaintiff for an off-site consultation with an ophthalmologist. Paper No. 7, Exs. A & B. Wexford again denied the consultation because of the visual acuity in Plaintiff's right eye. CMS states, however, that Dr. Chopra later had Plaintiff assessed again for his visual acuity and he was found to have "impaired" vision. Plaintiff's case

was again presented to the utilization review committee, which approved him to see an ophthalmologist to assess the need for cataract surgery. *Id*.

Defendant CMS seeks to dismiss the Complaint under the doctrine of *respondeat superior* and also argues that the care provided to Plaintiff after June 30, 2005, was constitutionally adequate. Paper No. 7.  Defendants Galley and Sowers ("State Defendants") seek to dismiss the Complaint based upon Plaintiff's failure to fully exhaust his administrative remedies to the Inmate Grievance Office ("IGO") and the absence of supervisory liability.  Paper No. 13.

In response to Defendants' Motions, Plaintiff maintains that the problems with his eye began in 2001.  Paper No. 10.   He alleges that in spite of sick-call requests and administrative remedies, he continues to experience impaired vision.[2]  Plaintiff claims that as a result of complications from the cataracts, he was and is still having problems seeing, causing him to bump into objects and people. *Id*.   He states that Defendants' own records show that he was never properly treated for his eye condition and that he finally began to receive some treatment after this Complaint was filed.  Paper No. 15.   Plaintiff indicates that as a result of this suit he received reading glasses and has been scheduled for eye surgery. *Id*.  He claims that for more that for more than five years sick-call requests and administrative remedies  were either dismissed, never answered, or were responded to with a "bandage" approach. Paper   No. 15.   Plaintiff states that Defendants never answered or acknowledged his request for IGO review.

To the extent the Complaint attempts to implicate CMS (RCI Dispensary) in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear.  The doctrine of respondeat superior does not apply to § 1983 claims.  *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

---

[2] Plaintiff now takes issue with Dr. Tritch's decision to take him off pain medication ("Motrin").

Moreover, Plaintiff's claims against the State Defendants are subject to dismissal. In response to the State Defendants' claim that he has never filed a grievance with the IGO, Plaintiff asserts that Defendants never acknowledged his IGO remedies. He does not, however, come forward with a declaration or verified documentation to show that he did in fact file for review with the IGO over the course of the period at issue. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 735 (2001); *Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 2004 WL 1205695 (4th Cir. June 2, 2004) (per curiam). Further, Plaintiff has not and cannot show that the State Defendants failed to provide him needed medical care, deliberately interfered with a physician's performance, or tacitly authorized or were deliberately indifferent to a physician's constitutional violations. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990).

The Court's analysis of Plaintiff's claims does not end here. The undersigned additionally finds he has failed to show an Eighth Amendment violation. In order to state such a for denial of medical care,[3] an inmate must demonstrate that defendants' actions (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

[3] The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter....becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk defendant actually knew at the time. *See Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001), *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998).[4] Moreover, the prisoner must allege ways in which Defendants' actions (or inactions) resulted in "serious or significant physical or emotional injury."[5] *De'Lonta v. Angelone*, 330 F.3d at 634. Assuming, *arguendo*, that Plaintiff has proven the objective element

---

[4] "[A]ny negligence or malpractice on the part of....doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

[5] The Court further observes that the Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

of a serious medical condition, the Court finds that he has failed to satisfy the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants.

There is no dispute that in 2005, Plaintiff was diagnosed with a dense cataract on his left eye that had been present for more than two years. A cataract is a congenital or degenerative opacity of the lens. The cardinal symptom of juvenile or adult cataract is a progressive, painless loss of vision, with the degree of loss dependant on the location and extent of the opacity. *See* Merck Manual at 724, 17th ed. 1999. According to the record before the Court, Plaintiff sought corrective cataract surgery and was periodically examined by nurses, P.A.s, and physicians and then referred to and seen by an optometrist. In November of 2005 and November of 2006, Plaintiff was referred to an ophthalmologist to evaluate the need for cataract surgery. Because the visual acuity in his right eye was better than 20/40 corrected, the referrals were denied by Wexford.

In February of 2006, Plaintiff inquired about the status of his cataract surgery and his vision was re-checked, with only slightly different results from the November, 2005 review. Plaintiff was prescribed and did receive eyeglasses to correct myopia in February of 2006. His complaints of pain in his left eye and forehead were evaluated and he was examined for his chronic sinusitis, back pain, and cataract removal in March and September of 2006. Plaintiff was again referred to an optometrist and received another pair of eyeglasses in May of 2006, and was seen by a nurse and P.A. in September and October of 2006. Signs of nasal congestion were noted, but when seen by a P.A., Plaintiff offered no complaints of eye pain.

Plaintiff's eyesight was subsequently re-evaluated and his case was again presented to Wexford, which approved his referral to an ophthalmologist to assess his surgical needs. According

to Plaintiff he was given the green light for cataract surgery and this procedure was to be performed in February of 2007.

There is no demonstration that Plaintiff's eye problem was wilfully disregarded so as to cause him injury.[6]  He states that he has been approved for the surgical procedure.  Previously, his cataract condition was evaluated and treated under acceptable medical community standards.  Plaintiff periodically received a refractive examination and he was provided eyeglass prescription changes during cataract development.  The cataract surgery was not performed until the best corrected vision for his right eye fell under 20/30.  In simple terms, health care professionals determined under objective criteria that Plaintiff's cataract had not been at a surgical stage because his visual acuity had not sufficiently deteriorated.   The facts do not support a finding of deliberate indifference by Defendants.

## **Conclusion**

The Court concludes that no constitutional violation has been demonstrated and that Defendants are entitled to the entry of judgment in their favor.[7]  A separate Order follows.[8]

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 21, 2007

---

[6] Plaintiff's Complaint raises general claims of eye pain.  The medical record presented to the Court indicates that Plaintiff did file sick-call requests complaining of pain related to his eye, but these requests were made in conjunction with claims of chronic sinusitus, congestion, and back pain. Paper No. 7, Ex. B.  He was treated by medical staff with Benadryl, Motrin, and Ibuprofen. *Id*.

[7] The Complaint against Western Correctional Dispensary, related to care received prior to July 1, 2005, shall be dismissed.

[8] CMS shall, however, be required to provide a status report with regard to Plaintiff's eye surgery within thirty days.